All right, our next case is the United States v. Nashlai. Mr. Miller, been a while, glad to hear from you today. Thank you. Please report. I'm Marvin Miller on behalf of Ms. Nashlai, and this is an interesting case. At the beginning, before trial commenced at a hearing with the court, the defense said they wanted to present evidence that she was an abused woman, and because of that situation, she did not ask whether there were employees in the loan that was the subject of the case. Count one was a conspiracy to get a payroll protection loan for two different companies that her husband had founded, and it was alleged that what she did was prepare the payroll spreadsheets that were used to accompany the loan application, and the allegation was that she knew that in the spreadsheets there were no employees when she said these are the employees and these are the amounts, and the defense was that, well, she didn't know whether there were employees or not, and she didn't ask, and the reason she didn't know and the reason she didn't ask was because she was an abused woman. Now, the evidence in the record, though, that you were pointing out to, or not you, trial counsel was pointing out to the court, Mr. Miller, was the August 2020 conversation with her husband's daughter, isn't that correct? That was part of it, yes. And that occurred like three and a half months after these events in question, so did you present, or did counsel for the defendant present to the court any contemporaneous evidence or evidence prior to the acts in question that she was acting under compulsion from her husband? No, and what he wanted to do was to have her testify, and the judge said that . . . Have who testify? The defendant. The judge said the defendant may testify that I was compelled and that's it, and the defense lawyer said, well, look, we want her to say I didn't know and I didn't ask and why, and explain why, and the judge said you can't do that. If she mentions anything at all about that, that's not going to be allowed. No abuse, no beatings, no psychological effects at all. I thought the whole basis of that was that the defense counsel at trial said, look, we're not going to put on a duress defense, absolutely not, we're not going to do that. But it had the appearance of putting on a lot of a defendant's duress evidence, but either not having to meet the elements of duress or, for instance, with the email that Judge Keenan referenced, getting the defendant's statements into the record but without ever subjecting her to cross-examination. No, no, the defense was told by the judge she may not testify about abuse or physical abuse or anything like that, and it was not a duress defense. Duress says I committed the crime and I was compelled to commit the crime because if I didn't, I was going to be killed, I was going to be maimed, serious immediate bodily injury right then and there. The defense said we're not doing that because it, and JA 101-102, we would have to admit we're not admitting. She didn't know, and she didn't know because she was abused. And there's no, and that's different than duress. That's a defense that goes to mens rea and negates it. It's not an affirmative defense, it's not immediate harm. All through their brief, they say threats of abuse, threats of abuse in the context of right now, right now, right now. There was no dispute that battered women who are abused have physical and psychological abuse. It leads them to be in a sense of helplessness and passiveness and obedience that's not questioned. Well, and what evidence was there in the record, though, that she was this type of, or was suffering from this kind of abuse, other than the August 2020 conversation that we previously mentioned? There was that tape, which was, she didn't know she was being recorded. If you hear it, she sounds emotional, and it's the description of a present emotional sense under 8033 would be admissible. Also under 807, because she didn't know it, and she's talking to someone about events in the past. And the fact is that she was talking about, in that conversation, what was going on when the loans were going forward. This is the August conversation. The August conversation, the secret tape recording. And that was a sufficient basis for the defense lawyer to say, we want her to testify. And the testimony would have been along those lines. But the judge says she cannot testify. I'm not going to let her take the stand and explain why she didn't ask. Was there ever a proffer from defense counsel? I mean, I know there was a lot of discussion. We want her to testify and say she was abused and this, that, and the other. But did they ever make a proffer of, if she testifies, she's going to testify that this, this, this, and this happened? It was not put in that way. However, it was in the record because it was what was on the tape, and the defense lawyer wanted the jury to hear the tape. And the tape would have been either, if it was admissible, the judge could have said, well, after she testifies, you can put it in. And it was clear that those facts in that tape, which were known to the defense, the prosecutor, and the judge, were evidence of abuse. And if she was going to testify, it would be logical and consistent with the presentation of the defense intent of establishing abuse, that that's the lines about which her testimony would follow. And so it was clear, and no one was questioning the nature of what her testimony would be. Everybody, because the prosecutor said, well, if she testifies to abuse, it's going to be prejudicial. And if she testifies to abuse, and people understand what abuse is and how it works, it's psychological and physical. And the court said, yes, it's prejudicial and it's not relevant. Well, it is relevant, and there was no question about what the testimony would be, because we have an outline of the abuse. 90% of the time, he berates me, he shoves me, he slaps me, he hits me, he's threatening to tear out my stomach. That's the nature of the testimony. What's your best case where there's not a duress defense, and the evidence is not offered in mitigation at sentencing, but it's offered as part of the defendant's case in chief to negate mens rea, but it's not a duress defense? The closest is the Merengue case from Maine. But I will venture so far as to say that there are not a bunch of cases out there where this issue has come forward. But the sentencing cases like Johnson in 91 were 30-some years ago. The law says, and you have said that in Queen, that relevance, which is a basis to exclude, that relevance under in courting Wigmore is such that if it has any tendency to prove something that's in issue, it's relevant. It doesn't have to be the bombshell that's going to bust the case wide open. Can I ask you a question? I feel like if I had been the judge, just a minute or two ago, you were sort of outlining the abuse, threw me down the stairs, hit me, threatened to cut out my stomach. I would be concerned about jury confusion, even if there was some minimal relevance here. It seems like, I mean, even conceptually, it is hard to sort of separate out the duress defense from allegations like that. And it just seems like the jury would be hard-pressed not to think that what it was supposed to decide was, was she too scared to say no. It's not that you're scared. Well, I understand that. But my concern would be that the jury would think that that was the question in front of it, that they would think they had a duress defense case, basically. If she was allowed to testify and present the evidence, and if the lawyer was allowed to argue it, there would also have been an instruction. Yeah. And so the jury would have known that it's not duress, that it's abuse, and what they are considering. But can I just finish this one thought? The other thing that makes me worried about it is that it seemed to me you wanted to, the idea was to introduce this evidence because it would explain why the defendant didn't ask questions, right, why she didn't know. But this didn't seem like it was being tried as a case about what the defendant didn't know and why didn't she ask questions. It wasn't about willful blindness. The evidence put the defendant, like, right smack in the middle of all of these events. I mean, those texts. It's not that she didn't know. She's writing the texts about how we're going to pull this off. The texts were about the loan, not about the payroll thing itself. She got advice from Kobe, the banker, about the payroll, and she exaggerated some of it. The whole case was whether or not she knew, and that was the issue. She kept texting or emailing her husband about this is what I'm doing, this is how I'm going to do it. Are you sure you want to go through with this? And I think there's one exchange where he says if you're not comfortable with this, leave it. But the government has a fair amount of evidence from the ADP consultant, the auditor, the court-appointed custodian for the airline company that really, as Judge Harris puts it, well, she's right there in the middle of it, if not the creator of it. I mean, wasn't there also evidence where she told her husband, you know, this isn't the IRS, this is the SBA, you know, suggesting? And you could say that it suggests that. You could also say that it suggests that here's a brand-new program. It never existed before. There's never been anything like it. Let's try it because it's a different deal. And you have the inferences that can go that way. And if she was allowed to defend herself and testify about abuse and the consequences of it and why she didn't ask, then the jury would decide whether or not the inferences that you're drawing are correct, and there would have been a counter to those inferences. There was no direct evidence she knew. I've never been in a case where the chief cooperator was never on the stand, and he could have said directly, and he didn't. They kept Kobe, the banker, off the stand also, and he knew what he talked with her about. They don't have any idea about conversations they had over the telephone. They don't have all the texts. His phones were in his children's control for months and months and months. Then they were in the lawyer's control. Nobody knows what other texts were on them or not. And if she'd had a chance to say, ladies and gentlemen of the jury, this is what was going on, then A, it was relevant under Queen, and then it would have also have been non-prejudicial because under Arimony it would not have excited the jury to what you said in that case, which was irrational behavior. And it wouldn't have prejudiced the husband because he didn't testify. So it would have prejudiced the government. The issue is the jury should have had a chance to consider this. It's admissible because it's relevant. It's admissible because it's not prejudicial. You know what she's going to testify about. She's going to testify consistent with the tape recording and that she'll be subject to cross-examination. And that's the reason why they have the instruction that is willful blindness because was she willfully blind or did she not know for a reason? And she should have had the chance to tell the jury that she didn't know and what the reason was, and the judge said no. He was wrong on relevance and wrong on prejudice. Mr. Miller, are you going to talk about the jury instruction? Very briefly, Your Honor. Or in your rebuttal? I'll do that in my rebuttal. I guess you need to briefly mention it here to talk about your rebuttal. I do intend very briefly. Instruction on 4 and 5 tied them to Count 1, the conspiracy in Count 1. 11 through 18 are how to get the loan. 21 is spending the money, doesn't mention the loans. The loan doesn't mention transfers in 4 and 5. The transfers in 4 and 5 are not said to be part of the conspiracy. They're just simple transfers of money. So it's not spending from the conspiracy. It's not getting the loan from the conspiracy. And the tying them to the conspiracy was erroneous. I just have one quick question. How did the erroneous instruction get into the record? Who put it in? Or do you know? I don't know who submitted it. I know that the judge gave it. I'm not sure that it was consistent with the instructions from the prosecution. I know they did not come from the defense. Okay. And there was no objection? There was. And it's clearly erroneous because, as you said in Hutchinson and Pavlicek, if there's no proper instruction on what the jury has to find, you never sustain a conviction. And in Pavlicek it was, was the jury accepting overt acts outside the statute of limitations or inside? We don't know because it was a general verdict. Here we don't know whether they were looking to tie this to count one, which, as you said, is critical because if it's not a proper instruction, you can't sustain a conviction. So that makes it fundamental. And I know that gets it past plain error. All right. Thank you very much. Thank you. Mr. Harvey? Good morning, Your Honor. May it please the Court, Jordan Harvey for the government. I'd like to first address the evidentiary ruling made by the District Court, and I'd like to pick up on the panel's questions regarding what allegations of abuse were even at issue. This entire motion in limine made by the government, which was approved by the district judge, was based on the allegations made in that August 2020 tape, three and a half to four months after the events of the fraud scheme. This was not an abuse of discretion by the judge. Rather, this was a decision that the judge made based on what the defense of the appellant actually was. The defense put forward by the appellant was that she was in a relationship that did not allow her to understand what was going on. I think, as Mr. Miller mentioned, and as we mentioned in our brief, the opening statement, the closing argument was about, she was under the influence of this individual that she did whatever he wanted because she had just lost her first husband when she met him. I think defense counsel at trial said that she was in a frenzied, manic mental state. That was the core and the foundation of her defense. As part of that defense, they wanted to reference, oh, and also this tape from four months after all of these events. I think, to the panel's questions, to Mr. Miller, this gets at the district judge's decision, an evidentiary ruling regarding the relevance determination that was made. When the judge made this decision on page 101 of the joint appendix, the judge said that in the absence of a direct offense, any mention of this type of abuse is, quote, inherently prejudicial, particularly if the probative value is of no real significance, end quote. There was a relevance determination that, because she said, I'm definitely not putting forth a duress defense, I'm not asking for a justification of duress, a jury instruction, the relevance, the probative value and the relevance was minimal. On top of that, I think Mr. Miller stated that if something is relevant, if it has any tendency to prove an issue in the case, but the admitting of evidence does not begin and end with relevance. It must give way to other rules of evidence, such as Rule 403. The judge not only determined that it was irrelevant, but also under the 403 factors that it was more prejudicial than probative. There was a lot of discussion back and forth with the trial judge about we want her to testify, she'll testify that she was coerced and that she felt compelled to do this. I think Mr. Miller acknowledged that there wasn't a specific proffer of you let her testify, here are the things she's going to testify to because you've got these concepts of coercion or abuse, if you want, but there's nothing that connects it so it would make it difficult to rule on the argument that I want my client to testify about these topics without knowing a little bit about what exactly is this defendant going to say. Is it your understanding of the record that there is no proffer per se of the defendant's proposed testimony? That's exactly right, Your Honor. Pages 98 through 104 of the joint appendix go through that entire discussion that you just referenced and I would agree there is no specific proffer of what allegations there would be of abuse and whether they occurred during the time of this fraud scheme and what effect it had on the fraud scheme. None of that was proffered, none of that was there, and that was part of the judge's relevance determination. I think for those reasons, the judge's determination I also want to mention what the judge did allow her to present, which was everything about the fact that she was compelled, the fact that she was under the influence of this individual, everything I was mentioning before about her compromised mental state because of the death of her first husband, and that was explicitly permitted by the district judge. They talked about that in opening, in closing, even allowed her sister to come in and testify and sort of tearfully tell a story about what her sister was like and that she left the family to go on this trip at Christmas. I think the district court did not make an arbitrary or irrational ruling, which of course is the standard for an abuse of discretion and just sort of out of hand rejecting her entire defense. The district court permitted what was the core and the foundation of her defense and merely excised the portion about this, references in this tape about abuse from four months after because they were irrelevant in the absence of addressed offense and because they were more prejudicial than probative under 403. For those reasons, this was not an abuse of discretion. Even if this panel were to find that there was an abuse of discretion, harmlessness review would be the next step. In order for the appellant to succeed on this claim, the court must also find that the error was not harmless. That would require the court to assess the effect of the error in the light of all the other evidence, and I believe as the panel was just mentioning before, when Mr. Miller was here, there's an overwhelming amount of evidence of her direct knowledge and active, assertive, enthusiastic participation in this scheme. Pages 22 through 45 of our brief sort of comprehensively or exhaustively list all of the different ways that the government proved that she was not sort of an unwitting or sort of following blindly and just doing whatever she was told. As Your Honor mentioned, she was explicitly told, hey, if you don't want to do this, then just leave it. You can judge for yourself. And she said, it's a go. I'm convinced. Do you feel okay with it? That there's these back and forth conversations. She's explaining very clearly all the ways in which she is taking the initiative to create these false payroll reports that she is manually having to figure out the taxes that would appear in a payroll report. Clearly she knew that these reports she was creating were not legitimate. Why else would a person need to manually figure out the taxes for payroll and things like that? I also think that the documents that she submitted, separate and apart from her work with these companies, that when she submitted documents to other banks for loans that they were trying to receive, those documents on three separate occasions contained the correct information, that these companies started in mid-December of 2019, that they were essentially shells for the tax year of 2019, that they had no revenue, that they had no employees. She submitted these documents, including one document, only a week before she submitted the false payroll reports, because they were seeking loans and the banks were saying, oh, you have this business, did you file any taxes for 2019? And she submitted these documents on three different occasions, including, of course, one week before she submitted the PPP loans, saying, oh, we didn't have to submit any taxes in 2019 because the business didn't operate until December of 2019, had no revenue, had generated no income, had no employees. And then a week later, files with Bank of America, spreadsheets with 50 employees, claiming that they paid these employees all these millions of dollars, and for that reason they needed $2.5 million in PPP loans. The list goes on and on, and I know that the Court has read the record, but pages 22 through 45 of our brief sort of lay out comprehensively all of the different ways in which, even if there was an error, even if there was an abuse of discretion here, that it was harmless, that it did not have an effect, that even if she had been able to talk about this abuse on this tape from four months later, it would not have had an outcome. I'm sorry, it would not have had an effect on the outcome of the case. If there are no questions on the first issue, I'll turn to the second issue of the jury instruction. The jury instruction issue relates to… Was this a pattern jury instruction? This was a jury instruction… Because it seems a little out of the normal. So this instruction came directly from the O'Malley instruction manual, the O'Malley, Grenegan, Lee, and is common in conspiracy cases where various co-conspirators engage in different conduct. And so this was not something that the government of the AUSAs on this case sort of wrote themselves. It was taken directly from the O'Malley sort of pattern jury instructions. You're saying the government offered the instruction? The government did offer this instruction. The defense did not offer a competing instruction. Rather, they said that this instruction was not necessary. They didn't argue… Essentially, they didn't make any of the arguments they're making now on appeal, and that's why we argue that it was forfeited. I don't think it was forfeited here, but would a plain error apply? A plain error, exactly. I don't acknowledge a plain error would apply here, so you need to address why it's not. Is it error, and if so, is it plain? Yes, Your Honor. I think the—well, not I think. The objection by the defense at trial was that this was unnecessary because all the principles covered here were also covered in the aiding and abetting instruction. So that was the objection below, which is, of course, different than what they're arguing on appeal, which is why plain error review applies. On plain error review is the defendant rather than the government that bears the burden of proof and that they must show that if there was an error, that the error affected her substantial rights, meaning that it affected the outcome of the district court proceedings. The appellant has not shown that, cannot show that. By giving this instruction, the district court committed a clear and obvious error. This court, and I don't believe we referenced this case in our brief, but this court in U.S. v. Ashley discusses instructions of this type in other cases and states that a defendant is liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy, essentially the Pinkerton liability. And that's what this instruction was. I'm sorry. I thought—I may not understand. I thought the claim was that that would be fine as to—I can't remember the counts— the bank fraud counts because that was part of the conspiracy, but that counts four and five had nothing to do with the conspiracy. They were not charged as part of the conspiracy. So isn't that—I thought, is that the basic problem here or potential problem that this count one instruction seems to suggest that you could convict based on Pinkerton liability for all of the counts, but in fact, at least it sort of—at least it is argued, the counts four and five, the monetary transactions, are not charged as part of the conspiracy. That's right. That is the appellant argument. Okay. So why is that wrong? Our argument is that the indictment does incorporate— the conspiracy count in the indictment does incorporate counts four and five. So you—okay, so—and I mean I—so I also am trying to figure out what went wrong here. But so basically you—on the theory that counts four and five were incorporated into count one as part of the conspiracy, you wanted an instruction that reached counts four and five. That's right. Okay. Yes. All right. I'm looking at count one in the appendix. Why don't you give us what you say is the best language that supports your argument about the incorporation of counts four and five. So I'm on joint appendix pages 11 and 12. Count one states it was a further part of the conspiracy— So which paragraph are you on there? I'm not sure. I have it written here.  I would have to look at—which I don't have with me, and I apologize for that, Your Honor. I don't have it numbered by paragraph. All right. Well, go ahead and read it. We'll find it. It was a further part of the conspiracy that once—and then I have it in brackets here— once the defendant and her husband obtained the proceeds of the PPP loans, they knowingly spent those proceeds in part on numerous items that they knew were not authorized under the PPP. There's also on joint appendix page 28, under the heading of count one, the nature and purposes of the conspiracy are stated to be, quote, to spend the fraud proceeds on items that were not authorized under the PPP. And so this, I think, is probably the best language to show that. Well, I'm looking at the nature and purposes of the conspiracy, which would be paragraph 11. It says the purpose and object was to obtain monies. Okay, I see where it says to spend. All right. And so I think that's sort of the best language, and I can see why. I can see, Judge Harris, that it could be clear, but I think that our position is that this incorporates not only the receiving the money, but also, and sort of understandably, spending the money, transferring the money. That a conspiracy to fraudulently obtain monies sort of has no purpose if you're not going to then transfer and spend those monies. Judge Miller's argument on the brief to be there's a difference between spending and transferring. I did see that, Your Honor. I think that these were charged as 1957 counts, which is any transaction of $10,000 or more. And so I think it could be if someone spent, you know, purchased an item that was $10,000 or more, that could constitute it. Here, they were transfers of $10,000 bank transfers from one bank account to another. Can I ask you something? I'm just confusing about this instruction issue. In your brief, you also argue in the alternative, if they're not incorporated, well, the instruction on counts four or five says specifically it has to be the defendant's own conduct. So both things can't be right, right? If in fact it was incorporated into count one, then the instructions on four and five are incorrect, right? Because they say it does have to be the defendant's own conduct. You can't rely on Pinkerton liability. So I'm just having trouble figuring out how your arguments fit together. Yes, Your Honor. I think it's two ways of proving the same thing. But they're two inconsistent ways, and that's what I don't understand. If you thought count one was incorporated, I'm sorry, if you thought count one incorporated the transfer offenses under counts four and five, why did you want a jury instruction for counts four and five that, on your own account, says you can't use Pinkerton liability, it has to be her own conduct? I think that if the jury believed, beyond a reasonable doubt, that she directly engaged in this activity, which was the evidence that we presented in the case that we presented at trial, then that would sort of fall in line with the instructions in four and five. If the jury was not convinced of that, but was convinced that her husband, Kandambu, made those in part and in furtherance of the conspiracy, then she would also, through Pinkerton liability. So you asked for these instructions so the jury would have two different ways. So you are not making the argument you made in your brief that because four or five comes later and is more specific, it sort of clarifies that you can't use Pinkerton liability. We're not arguing that. I think it's an argument in the alternative, Your Honor. I think it's an argument that there is no... So you're arguing you can't use Pinkerton liability under counts four and five? I wasn't quite sure what you were saying there. I think, Your Honor, the argument, as Judge Harris said, I think there is... If the jury finds that she directly engaged in these activities, that sort of goes to the instructions in four and five, and that the fact that it was also incorporated into count one, the conspiracy would allow her to also be convicted under Pinkerton liability. And so I think these instructions, as sort of read together, allow for both avenues for the jury to find that she was guilty of counts four and five. But you are no longer arguing that, no, the jury could only have understood that for a conviction on count four and five, it had to be her own conduct. Because that's what you say in your brief, that you have to assume the jury followed that instruction. But this is a slightly different argument. I think it's an argument in the alternative. I think the primary argument is it is incorporated in count one, therefore there is no plain error. I think if this panel finds that it wasn't incorporated in count one and there is plain error, we get to the question of whether there was a substantial effect on her rights because she could only have been found guilty if she had directly engaged in that. And so I think in that scenario, we say, well, it didn't have a substantial effect because the jury very easily could have found that she directly engaged in this. So I understand the court's question. I hope that makes sense. Yeah, so it goes more to the we can't say on plain error review that the jury necessarily convicted her on a Pinkerton theory for counts four and five. That's right, Your Honor. Okay, Mr. Harvey, I'd like to mention something before your time runs out. Your brief, I think, is atypical from most of the government briefs that are submitted to us. You have a number of factual assertions that are not supported with JA sites. And what you're essentially doing is making these factual assertions and then saying to the court, you do the work. You know, find it. It's somewhere in there. And I'd like you to – I think it would be appropriate for you to give some thought to that next time you file a brief with this court. I apologize, Your Honor. I thought that we had cited most of our factual assertions in one place or another, but I will be diligent about that in the future. I apologize. All right. Thank you very much. Thank you. Mr. Harvey, Mr. Miller, you have some time left. If you don't mind, why don't you start with this jury instruction question because it is a little perplexing. Yes, Your Honor. Judge Agee, the instruction was that if they found that four and five were committed by a co-conspirator in furtherance of the conspiracy, then she's liable. Vicarious conspirator liability. Under count one. On count one. If she was a conspirator in count one and a co-conspirator in count one committed four and five, she's guilty. Under count one. Under count one. And count one would allow them to convict of count four and five. That's what he said. If you convict of count one, you can convict of count two, three, four, and five. And now two and three were the substance of offenses, and that's correct. Right in front of me. But I thought that his instruction, which was a little confusing, did say basically the effect that you can only convict under four and five if the government proves each particular element. There were two different instructions.  At JA 871, I think you have a correct instruction as to the elements that need to be proved. The judge instructs that four and five. Yeah. No, with the conspiracy. In the conspiracy, in the instruction there, he says that if you find the elements and a co-conspirator committed the offense and she was a member of the conspiracy at the time, then you can find her guilty of four and five because that's what he says. Later, he gives an instruction on four and five that have all the correct elements. So the jury has two different instructions about count four and five. And so the question that we have is. So is that 869? Or he says, if you find the government's proven the defendant guilty of conspiracy beyond a reasonable doubt as charged in count one, you may also find the defendant guilty of the crime alleged in the other count, an indictment which she's charged, provided you find the essential elements of that count have been established by a reasonable doubt. Right. So the essential elements for a co-conspirator beyond a reasonable doubt and she's in the conspiracy in count one, then you can convict her of the substantive offenses. That's true for two and three because two and three are part of the conspiracy because they are obtaining the loans. And paragraph 11 of count one says that the purpose is to get the loans and spend the money. Right. But then on 871, at the bottom half of the page, at JA 871 where the court is talking about the burden of proof for the crime of conspiracy, namely bank fraud, you have to prove the following elements beyond a reasonable doubt.  So wasn't there, don't we have a situation here, especially since the court at JA 870 talks about the purpose of the alleged conspiracy is violation of the bank fraud statute. They say that at 870 by referring to 18 U.S.C. section 1349. So don't we have a situation here where there was an incorrect instruction followed by a correct instruction? Yes. And what do we do with that? Exactly what, that's exactly right. And what you do with that. What do we do with that on plain error? On plain error it is, it gave the jury an improper way to convict. And because the jury had an improper way to convict because of an invalid instruction, then you can't, and a general verdict, then you can't accept the verdict. In Pavlicek. Okay, one question to piggyback, and I know I'm interrupting, I apologize. That's all right. The verdict form itself says, as to count one, conspiracy to commit bank fraud, guilty. How does that bear on our decision here? If she's guilty of count one, then they could also convict of four and five. And so that's the conviction on count one, and then they could also convict on four and five. And we don't know whether in convicting on four and five, they convicted based on the erroneous instruction or convicted based on the correct instruction. And that's why that case, Pavlicek, is important, because it was not known whether the jury convicted on a valid basis or an invalid basis. And they could have convicted on a valid basis or they could have convicted on an invalid basis. And in that case, and in Hutchinson, you said that we have repeatedly said that when there is an error in the instructions or on the elements, whether it's what the jury has to find, then on that basis, you cannot sustain the conviction. And you can't sustain the conviction on that basis because you don't know whether, as you said, incorrect or correct. Logic in jury life, I've done a couple, is that the jurors look at the counts one, two, three, four, five. They don't look at one, five, four, two, three, six, eight. They do it in series. If they did it in series with the improper instructions and they didn't have the indictment, so they couldn't look at it for themselves, if they did it in series, then they would have said, oh, count one. The judge says if count one is by a co-conspirator and he's a co-conspirator, okay, fine. That's the end of the story. We don't need to do anything else with counts four and five or two and three. And that's, in my experience, is the logical way to look at it. But there are two different ways to look at it. And you can't say which. And I can't say which. And the government didn't say which. So we don't know which. So if we don't know which and one was invalid and one was valid, you can't sustain it. Well, if we agreed with you on counts one, four, and five, what about two and three? Were they valid? Two and three are valid because they're substantive offenses of getting the loans. And they're mentioned in count one in paragraphs 11, 13 through 18. And then 21 was spending. But these four and five are not spending. They're transfers. And so transfers aren't spending. I mean, in plain English, you can't say transfer is spending. And they could have said transaction. They said in their brief that it was contemplated. Fine, it was contemplated. But it wasn't done. The grand jury didn't do it. They didn't write it. It wasn't in the indictment. And you can't speculate. You have to charge everything that you want them to prove in the indictment. She's entitled to notice. And she didn't get it. And the jury had an invalid instruction, as you've pointed out. And so which one did they follow? The logic would be they followed the count one and did that first because that's the order of march that juries, I would submit, respectfully, normally follow. And so if you can't say which, then you can't say good. And you can't speculate good. You can't guess good. Pardon me, that's not really appropriate information. Thank you, Mr. Miller. We appreciate it. We're going to come down and re-cancel as soon as the clerk adjourns us. Signing down. Thank you. This honorable court stands adjourned. Signing die. God save the United States and this honorable court.
judges: G. Steven Agee, Pamela A. Harris, Barbara Milano Keenan